# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **MITCHELL AND SAMANTHA HIGGINBOTHAM** | : | **DOCKET NO. 2:20-cv-01157** |
| **VERSUS** | : | **JUDGE JAMES D. CAIN, JR.** |
| **CITY OF DEQUINCY ET AL** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is a Motion for Leave to Amend [doc. 14] and a Motion to Remand [doc. 18] filed by plaintiffs Mitchell and Samantha Higginbotham. The Motion to Remand additionally requests attorney's fees and costs associated with the motion. Doc. 18, p. 3. The motions have been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636. Defendants McNeilus Truck and Manufacturing., Inc. ("McNeilus"), Oshkosh Corp., Inc. ("Oshkosh"), and Paccar Inc. ("Paccar") oppose both motions. Docs. 27-30.

Since a ruling on the Motion for Leave to Amend will affect the outcome of the Motion to Remand, we consider both motions together. For the reasons stated below, we **RECOMMEND** that the court **DENY** the Motion for Leave to Amend. Doc. 14. Additionally, we **RECOMMEND** that court **DENY** the Motion to Remand, **DISMISS** the City of DeQuincy without prejudice, and **DENY** the Motion for Attorney's Fees. Doc. 18.

# I.
## BACKGROUND

This matter arises out of an alleged incident occurring on or about July 19, 2019, on Richardson Road in Calcasieu Parish. Doc. 1, att. 3, p. 3. On that day, plaintiff Mitchell Higginbotham ("Mitchell") was working as a "Hopper"[1] on the back of a sanitation truck as part of a two-man crew with Waste Management, Inc. ("WMI"). *Id*., ¶ 5. A Hopper has a designated step on the rear of the truck to ride along the route and steps off at each stop to pick up trash cans. *Id*.

The plaintiffs' original complaint alleges that Richardson Road, which was part of WMI's route is "a short, dead-end road with no turn around for large truck [sic] such as the refuse truck." *Id*., ¶ 6. As a result, the truck driver had to back the sanitation truck from Highway 27 down Richardson Road. *Id*. Mitchell disembarked from his step and assisted the driver by directing traffic on Highway 27 and guiding the truck with hand signals part of the way down Richardson Road. *Id*., pp. 3-4, ¶ 7. While the driver began backing down Richardson Road, Mitchell went to get back on his step, but slipped and fell such that he was lying underneath the truck. *Id*., ¶ 8. The truck rolled over Mitchell's legs, causing severe damage to his lower legs and leading the amputation of his left leg below the knee. *Id*., ¶¶ 8-9.

On July 7, 2020, plaintiffs filed suit in the 14th Judicial District Court in Calcasieu Parish against the City of DeQuincy ("DeQuincy"), Peterbilt, Inc.,[2] Oshkosh, and McNeilus—the alleged subsidiary and/or tradename of Oshkosh. *Id*., p. 6 ¶ 18. The original complaint alleged that DeQuincy contracted with WMI for trash services and that the city owned and maintained

---

[1] According to plaintiffs' complaint, "a Hopper is charged with picking up the residential trash cans, placing them in the hydraulic arms of the refuse truck … then placing the trash cans back on the curb." Doc. 1, att. 3, p. 3, ¶ 5.
[2] Peterbilt, Inc., an unincorporated division of Paccar, Inc., was improperly named and served as "Peterbuilt, Inc." See Doc. 2 in which Paccar appeared to file its written consent to removal.

Richardson Road. *Id.*, p. 5, ¶ 12. The complaint brings claims under Louisiana Civil Code articles 667, 2317, and 2322 for strict liability, alleging that DeQuincy had *garde* of Richardson Road and had the "right and/or obligation to ensure that trash pick-up services provided by contractors on its behalf could be conducted in a manner that was safe to sanitation workers." *Id.*, p. 6, ¶ 17. Under article 2315 *et seq.*, plaintiffs allege that the design of Richardson Road was hazardous in that it was a dead-end road with no adequate turnaround for refuse trucks, and that DeQuincy knew or should have known of this danger but failed to remedy it. *Id.*, pp. 5-6, ¶¶ 14-16. Additionally, plaintiffs bring products liability claims against McNeilus and Peterbilt, alleging that they manufactured, assembled and/or sold the refuse truck at issue to WMI. *Id.*, ¶ 19. Plaintiffs allege that the truck was unreasonably dangerous due to faulty design, inadequate safety features, failure to warn, or failure to instruct on the proper use of the truck, and this unreasonably dangerous condition proximately caused Mitchell's injuries. *Id.*, pp. 6-7, ¶¶ 20-21. Mitchell's wife also brings a loss of consortium claim. *Id.*, p. 8, ¶ 24. WMI and its workers' compensation insurance carrier Ace American Insurance Co. ("Ace") filed a Motion to Intervene and Petition of Intervention on July 27, 2020 alleging that it is legally subrogated to the plaintiffs' rights to payment. *Id.*, pp. 47-48.

Having been served on August 13, 2020, defendants McNeilus and Oshkosh timely removed the case to federal court on September 4, 2020, alleging diversity of citizenship as its basis for removal.[3] Doc. 1. Paccar filed its "Consent to Removal" into the record on the same day. Doc. 2. Defendants' Notice of Removal alleges that plaintiffs are each a domiciliary of Louisiana,

---

[3] Under 28 U.S.C. § 1446(b), the proper removal window would be within 30 days of the defendants' initial receipt of the pleading, through service or otherwise.

while all defendants and intervenors besides DeQuincy are citizens of different states.[4] Doc. 1, pp. 2-4, ¶¶ 4-11. While DeQuincy's citizenship is that of Louisiana, defendants argue that the city's citizenship need not be considered for the purposes of diversity because the city is improperly joined. *Id.*, p. 4, ¶ 11. Defendants attached to their Notice of Removal a sworn affidavit from Mr. Pat Brummett, the City Clerk of DeQuincy (the "Brummett Affidavit"), who attests to the fact that, at the time of Mitchell's accident, DeQuincy did not have a contract with WMI but rather with BFI Waste Services, LLC. *Id.*, att 2. Moreover, the Brummett Affidavit states that Richardson Road is not within DeQuincy's city limits. *Id.*, p. 2. As such, the defendants argue that DeQuincy did not have *garde* over the road nor did it owe a legal duty to Mitchell, and as such this court may disregard DeQuincy's citizenship because there is no reasonable basis to predict that Louisiana law would impose liability upon DeQuincy. Doc. 1, p. 6.

On October 21, 2020, the plaintiffs filed a Motion for Leave to Amend their complaint which sought to add Calcasieu Parish Police Jury ("Calcasieu Parish") as a defendant to the case. Doc. 14. In the proposed amended complaint, the plaintiffs advance the same theory of liability against Calcasieu Parish as did the original complaint against the city of DeQuincy. The proposed amended complaint alleges that the city and/or parish owned and maintained Richardson Road and therefore had *garde* of the road. *Id.*, att. 2, p. 3, ¶ 6. It also alleges that the city and/or parish contracted with WMI for trash services for the residents of Richardson Road and had a duty to eliminate or prevent hazards to WMI sanitation workers. *Id.*, pp. 5-6, ¶¶ 11-14. On October 23, 2020, the plaintiffs filed a Motion to Remand, arguing that (1) defendants' removal was procedurally deficient as they did not obtain the written consent of DeQuincy and Peterbilt before

---

[4] Per the allegations in the Notice of Removal, WMI is a citizen of Texas, Ace is a citizen of Pennsylvania, McNeilus is a citizen of Minnesota, Oshkosh is a citizen of the state of Wisconsin, and Paccar is a dual citizen of Delaware and Washington. Doc. 1, pp. 2-4.

removing the case; (2) DeQuincy was not improperly joined as a defendant as the plaintiffs have stated a valid claim for relief against it; (3) addition of Calcasieu Parish, a non-diverse party, as a defendant will deprive this court of subject matter jurisdiction. Doc. 18, pp. 1-3.

The defendants oppose both motions, arguing that plaintiffs will not be prejudiced if the amendment is not allowed because they do not have a valid cause of action against Calcasieu Parish or DeQuincy as both entities are immune from civil liability under Louisiana Revised Statutes 9:2798.1. Doc. 27, p. 6. Moreover, defendants argue that plaintiffs have failed to properly articulate a legal duty that either the parish or city owed to plaintiffs. *Id.*, pp. 10-13. As to DeQuincy, defendants also urge that it did not own or maintain Richardson Road, which is outside of the city's limits, and based on these undisputed facts there is no possibility of recovery against DeQuincy. Doc. 29, p. 5. As such, defendants contend that because DeQuincy is improperly joined and granting the plaintiffs leave to add Calcasieu Parish to the suit would be futile, this court may maintain subject matter jurisdiction. *Id.* pp. 6-10.

## II.
### LAW & ANALYSIS

Any civil action brought in a State court of which the district courts have original jurisdiction may be removed to the proper district court. 28 U.S.C. § 1441(a). District courts have original jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332(a)(1). The diversity provisions of 28 U.S.C. § 1332(a)(1) require complete diversity among the parties. *Caterpillar Inc. v. Lewis*, 117 S. Ct. 467, 472 (1996). Complete diversity of citizenship requires that "each defendant [be] a citizen of a different [s]tate from each plaintiff." *Owen Equipment & Erection Co. v. Kroger*, 98 S. Ct. 2396, 2402 (1978). The removing party bears the burden of

showing that removal was procedurally proper and that federal jurisdiction exists. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).

Here, we consider the Motion for Leave to Amend first, and thereafter consider the Motion to Remand.

### A. Motion for Leave to Amend

"If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). Post-removal amendments that would destroy diversity are subjected to closer scrutiny than ordinary amendments. *Parish Disposal Indus., LLC v. BFI Water Svcs., LLC*, No. 13-3068, 2014 WL 2207870, at *4 (W.D. La. May 27, 2014) (citing *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987)). The court should balance several factors to determine whether more weight should be given to "the defendant's interest in maintaining the federal forum" or the competing interest of trying all related matters in a single suit. *Id.* These factors include:

> (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction;
> (2) whether plaintiff has been dilatory in seeking amendment;
> (3) whether plaintiff will be significantly prejudiced if amendment is not allowed; and
> (4) any other factors bearing on the equities.

*Id.* at *4-*5 (citing *Hensgens*, 833 F.2d at 1182).

### 1. Purpose of Amendment

In determining whether the purpose of an amendment is to destroy diversity, courts consider whether the proposed amendment presents a valid cause of action. *Mallery v. Becker*, No. 13-2790, 2014 WL 60327, at *2 (W.D. La. Jan. 7, 2014). Courts have recognized that if the amendment presents a valid claim, "it is unlikely that the *primary* purpose of bringing those

defendants into a litigation is to destroy diversity jurisdiction." *Schindler v. Charles Schwab & Co., Inc.*, No. 5-82, 2005 WL 1155862, at *3 (E.D. La. May 12, 2005) (emphasis in original). Courts also consider whether the plaintiff knew or should have known of the non-diverse defendant's identity when the state court suit was filed; if plaintiff failed to join that non-diverse defendant to the action prior to removal, this "suggests that the purpose of the amendment is to destroy diversity." *Tomlinson v. Allstate Indem. Co.*, No. 6-617, 2006 WL 1331541, at *3 (E.D. La. May 12, 2006) (quoting *Schindler*, 2005 WL 1155862 at *3).

Defendants contend that leave to amend should be denied because plaintiffs have no valid claim against the parish. According to defendants, plaintiffs essentially allege that "the dead-end street did not have a turn-around lane, and, hence, the Parish is negligent." Doc. 27, p. 10. Defendants urge that there is no legal authority imposing a duty upon a municipality to ensure that "all dead-end streets within its jurisdiction have turn-around lanes," and the imposition of such a duty would be highly unreasonable. *Id*. Moreover, defendants argue that the parish did not owe a duty to a contractor's employees to protect from risks "inherent to the job." *Id*., p. 11.

In deciding whether to impose a duty upon a governmental agency, Louisiana courts examine "whether the plaintiff has any law—statutory, jurisprudential, or arising from general principles of fault—to support his claim." *Hebert v. Rapides Par. Police Jury*, 974 So.2d 635, 643 (La. 2007). Under Louisiana law, a governing authority owes a duty to motorists to maintain the roads it has custody of in a reasonably safe condition. *Naquin v. State Farm Auto. Ins. Co*., No. 20-1062, 2021 WL 1438318, at *2 (La. App. 1st Cir. 2021); *see also Sinitiere v. Lavergne,* 391 So.2d 821, 824-25 (La. 1980). To recover against a governmental entity for failure to maintain a roadway in a reasonably safe condition, the plaintiffs must prove:

> (1) the governmental entity had custody of the thing that caused plaintiffs'
> damages; (2) the thing was defective because it had a condition that created

an unreasonable risk of harm; (3) the governmental entity had actual or constructive notice of the defect and failed to take corrective action within a reasonable time; and (4) the defect was a cause-in-fact of plaintiffs' injuries.

*Naquin,* 2021 WL 1438318 at *2 (citing La. Civ. Code arts. 2317 and 2317.1; La. R.S. 9:2800; and *Boothe v. Dep't of Transp. and Dev.*, 285 So.3d 451, 456 (La. 2019)). When a road is not in the state highway system and falls within a parish but outside the corporate limits of any municipality, the duty to maintain the road rests with the parish. *Hebert*, 974 So.2d at 643. Notably, there is no "fixed rule" for determining whether a condition on a roadway is a dangerous defect—"the facts and surrounding circumstances of each particular case control." *Pickens v. St. Tammany Par. Police Jury*, 323 So. 2d 430, 432 (La. 1975).

Plaintiffs' proposed amendments allege that the parish should have either provided an alternate, safer method for the WMI workers to conduct waste pickup on Richardson Road, or should have built a turnaround lane at the end of the road so that a sanitation truck would not need to back down the road. Doc. 14, att. 2, p. 6, ¶¶ 14-15. The proposed amendments also allege that the parish owed Mitchell a duty "either express or implied" in its contract with his employer, WMI. *Id.*, ¶ 14. Defendants contend that plaintiffs' theory of liability is "completely novel and unsupported in law." Doc. 27, p. 10. Defendants cite *Perkins v. Gregory Mfg. Co.*, 671 So.2d 1036, 1040 (La. App. 3d Cir. 1996) for the tenet that "a principal does not owe a duty to protect the contractor's employees from risks inherent to the job." *Id.*, p. 11. Defendant contends that because plaintiffs alleged that "it is well known in the sanitation industry that backing these vehicles is one of the most dangerous maneuvers employees can perform…" that the risks were well-known and clearly inherent Mitchell's job as a sanitation worker. *Id.*

While the parish does have a general duty to maintain the roads in a reasonably safe condition for travel, we agree with defendants and believe Louisiana courts would find that

plaintiff Mitchell's incident was a risk inherent to the job of a sanitation worker, and not a risk inherent to the premises where the incident occurred. *See Roach v. Air Liquide Am.*, No. 12-3165, 2016 WL 1453074, at \*4 (W.D. La. Apr. 11, 2016). According to the plaintiffs' proposed amended complaint, the specific maneuver of backing up a sanitation truck is highly dangerous and poses risks to workers because sanitation trucks are "large and unwieldy with less visibility and more blind spots than typical vehicles." Doc. 14, att. 2, p. 5, ¶ 11. WMI should have recognized the unique risks associated with sanitation trucks and should have modified waste pickup procedures for dead-end roads accordingly. *See Roach*, 2016 WL 1453074 at \*4 (holding that under Louisiana law, an employer has a duty to ensure its employee's safety with respect to the specific hazards created by the performance of his work). For example, WMI could have provided smaller trucks for its employees to collect waste on Richardson Road, or even refused the job if the existing WMI trucks could not safely traverse dead-end roads.[5] As such, the parish owed no duty to Mitchell to ensure the safe performance of his duties by providing a turnaround for sanitation trucks on all dead-end roads. Doc. 14, att. 2, pp. 6-7, ¶ 15. Additionally, the parish owed no duty to devise an alternate method of waste pickup for WMI so that sanitation trucks would not have to back down the road. *Id*. We agree with defendants that the imposition of such duties upon the parish would be highly unreasonable.

Notably, Louisiana case law has not recognized a specific duty for a governing authority to provide a turnaround point for dead-end roads. Plaintiffs have cited case law upholding the

---

[5] *See* La. R.S. § 23:13:

> Every employer shall furnish employment which shall be reasonably safe for the employees therein. They shall furnish and use safety devices and safeguards, shall adopt and use methods and processes reasonably adequate to render such employment and the place of employment safe in accordance with the accepted and approved practice in such or similar industry or places of employment considering the normal hazard of such employment, and shall do every other thing reasonably necessary to protect the life, health, safety and welfare of such employees.

imposition of liability upon the state where it did not provide warning signs of an upcoming low clearance bridge early enough to give large trucks adequate time to turn around. Doc. 35, p. 14 (citing *Est. of Thomas v. State, Dep't of Transp. & Dev.*, 604 So.2d 617, 621-24 (La. App. 2d Cir. 1992), *writ denied*, 608 So.2d 167 (La. 1992)). We find *Estate of Thomas* distinguishable, as the dangerous defect therein ultimately arose from the state's failure to warn and not from the road's configuration. *Id*. Failure to warn is not at issue here, as the plaintiffs were clearly aware that Richardson Road had a dead end. Doc. 14, att. 2, pp. 3-4, ¶¶ 6-8.

Having found that plaintiffs' proposed amended complaint does not allege a valid claim against Calcasieu Parish, this suggests that the primary purpose of the amendment is to destroy diversity. *See Mallery*, 2014 WL 60327 at *2. As such, this weighs in favor of denying leave to amend under *Hensgens*. Additionally, we must consider whether plaintiffs knew or should have known of the non-diverse defendant's identity prior to removal. *See Tomlinson*, 2006 WL 1331541 at *3. Plaintiffs' counsel was on notice that Calcasieu Parish was a potential defendant as of August 7th, 2020 and removal occurred on September 4th, 2020. Doc. 1; Doc. 35, att. 1. Since the plaintiffs did not seek to add or substitute the parish as a defendant before removal, this also suggests that the purpose of the amendment is to destroy diversity and would weigh against granting leave to amend.

### 2.  Whether Plaintiffs were Dilatory in Seeking Leave

In determining whether an amendment is dilatory, courts often look to the amount of time that has passed between filing of the original complaint and amendment, as well as the amount of time between removal and amendment. *Lawrence v. Hertz Corp.*, No. 19-12114, 2019 WL 5541378, at *7 (E.D. La. Oct. 28, 2019). Courts may also consider how far the litigation has progressed. *Schindler*, 2005 WL 1155862 at *4.

Here, the plaintiffs filed for leave to amend on October 21, 2020, a little over three months after filing suit originally, and about a month and a half after defendants filed their Notice of Removal. Docs. 1 & 14. However, this court had granted plaintiffs an unopposed extension to respond to the Notice of Removal due to Hurricane Laura. Doc. 35, pp. 8-9; Docs. 10-11. We find this explanation sufficient and do not infer a dilatory motive. Thus, the second *Hensgens* factor weights in favor of permitting amendment.

### 3.   Extent of Injury to Plaintiffs' Interests

In determining the third *Hensgens* factor, courts consider whether the diverse defendant will be unable to satisfy a future judgment and whether the plaintiff could recover against the proposed nondiverse defendant. *Darr v. Amerisure Ins. Co.*, No. 16-232, 2016 WL 5110267, at *8 (M.D. La. Aug. 31, 2016) (citing *Gallegos v. Safeco Ins. Co. of Indiana*, No. 9-2777, 2009 WL 4730570, at *5 (S.D. Tex. Dec. 7, 2009)). "[C]onsiderations of cost, judicial efficiency and possible inconsistency of results militate in favor of not requiring plaintiff to prosecute two separate claims in two forums when both arise from the same set of facts and circumstances." *Joseph v. Fluor Corp.*, 513 F.Supp.2d 664, 670 (E.D. La. 2007).

There will be no harm to plaintiffs' interests if they are denied leave to add Calcasieu Parish to the litigation. It is evident that they cannot recover against the parish as they have failed to allege a legally cognizable duty. Thus, the third *Hensgens* factor weighs in favor of denying leave to amend.

### 4.   Other Considerations and Balance of the *Hensgens* Factors

The fourth *Hensgens* factor requires us to consider any other factors bearing on equities. Neither side has urged this court to make any other equitable considerations in its recommendation. Since the majority of factors discussed weigh in favor of denying leave to amend, we recommend

that the court deny plaintiffs leave to make the proposed amendment. Should the court accept our recommendation as to the Motion to Amend, DeQuincy would be the only non-diverse defendant remaining. We now consider the parties' arguments on plaintiffs' motion to remand.

### B. Motion to Remand

The plaintiffs' Motion to Remand argues that (1) defendants' removal was procedurally deficient as they did not obtain the written consent of DeQuincy and Peterbilt before removing the case; (2) DeQuincy was not improperly joined as the plaintiffs have stated a valid claim for relief against it, and DeQuincy will therefore destroy diversity and deprive this court of subject matter jurisdiction. Doc. 18, pp. 1-3.

The Fifth Circuit has noted that all defendants who have been "properly joined and served" must join in or consent to the removal of the action to federal court. 28 U.S.C. § 1446(b)(2)(A); *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1262 (5th Cir. 1988). Each served defendant, or some person or entity formally acting on its behalf and having the authority to do so, must provide a "filed written indication" of consent within thirty days of service upon the first defendant. *Getty Oil Corp.*, 841 F.2d at 1262 n. 11. This rule does not require the consent of a defendant whom the removing defendant contends is improperly joined. *Rico v. Flores*, 481 F.3d 234, 239 (5th Cir. 2007). Here, removing defendants did not need to obtain DeQuincy's consent to removal, as they contend that DeQuincy is improperly joined. Additionally, the written consent of Paccar, appearing on behalf of Peterbilt, was filed into the record on September 4, 2020. Doc. 2. Paccar filed its consent well within the thirty-day window that ran from the August 13, 2020 service of defendants McNeilus and Oshkosh. Doc. 1, p. 1. Thus, we find that removal was procedurally proper, and will now determine the propriety of defendant DeQuincy's joinder.

A court may disregard a non-diverse party's citizenship for purposes of determining subject matter jurisdiction if the party was improperly joined. *Allen v. Walmart Stores*, 907 F.3d 170, 183 (5th Cir. 2018). The non-diverse party is improperly joined where "there is no possibility of recovery by the plaintiff against an in-state defendant." *Smallwood v. Illinois Cent. R. Co*., 385 F.3d 568, 573 (5th Cir. 2004) (citing *Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003)).   To determine whether a plaintiff can recover against the in-state defendant, a court may "conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id*.

The misstatement or omission of facts that would determine the propriety of joinder allows the district court to "pierce the pleadings and conduct a summary inquiry." *Id*.  Accordingly, the court may consider summary judgment-type evidence along with controlling state law "to determine whether the plaintiff has a basis in fact for the claim." *Campbell v. Stone Ins., Inc*., 509 F.3d 665, 669 (5th Cir. 2007); *Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98, 100 (5th Cir. 1990).  If there is a "reasonable basis for predicting that the state law might impose liability on the facts involved" then the joinder of the in-state defendant is not improper, and the case should be remanded to state court. *Great Plains Trust Co v. Morgan Stanley Dean Witter & Co*., 313 F.3d 305, 312 (5th Cir. 2002).  However, the possibility of liability must be "reasonable and not merely theoretical." *Id*.  Additionally, "[t]he district court must also take into account the 'status of discovery' and consider what opportunity the plaintiff has had to develop its claims against the non-diverse defendant." *McKee v. Kansas City Southern Ry. Co*, 358 F.3d 329, 334 (5th Cir. 2004) (quoting *Travis*, 326 F.3d at 649).

Plaintiffs' petition misstates facts in making allegations that DeQuincy owns and maintains Richardson Road and that DeQuincy had a contract with WMI at the time of Mitchell's incident.

-13-

Doc. 1, att. 3, p. 4, ¶ 12. As these facts bear on the propriety DeQuincy's joinder as a defendant, it is proper to "pierce the pleadings" and consider summary-judgment type evidence under *Smallwood*. 385 F.3d at 573. The Brummett Affidavit attached to the defendants' Notice of Removal testifies that Richardson Road is not within the geographic boundary of DeQuincy, and further states that DeQuincy had no contract with WMI at the time of Mitchell's incident. Doc. 1, att. 2. Plaintiffs argue in response that consideration of the affidavit would move beyond the scope of the *Smallwood* analysis and would improperly delve into the merits of their claims. Doc. 18, att. 1, p. 14. However, the law authorizes us to consider competent summary judgment-type evidence—such as an affidavit—under these circumstances, as the petition misstates which entity is responsible for Richardson Road. *Smallwood*, 385 F.3d at 573. Additionally, plaintiffs cannot point to any summary judgment-type evidence that would support their claim against DeQuincy, but only speculate that further discovery could produce more information as to DeQuincy's liability. Doc. 18, att. 1, p. 14. Since Richardson Road falls outside of DeQuincy's city limits, we find that DeQuincy owed no legal duty to Mitchell as it did not own or maintain Richardson Road, nor did it have a contract with WMI.

Even without considering the facts provided in the Brummett Affidavit, we note that the plaintiffs' petition would still be legally deficient. Assuming *arguendo* that DeQuincy was responsible for maintaining the road, there is still no legally cognizable duty alleged in plaintiffs' petition. We find that DeQuincy, similarly to Calcasieu Parish, would have no duty under Louisiana law to ensure that each dead-end road has a turnaround for large sanitation trucks. *See* discussion *supra*, Part II(A)(1). Rather, the duty to devise a safe waste pickup procedure for Richardson Road fell upon WMI as the contractor. *See Roach*, 2016 WL 1453074 at *4. As such, there is no reasonable possibility that plaintiffs could recover against DeQuincy, the remaining in-

-14-

state defendant, under these facts. Moreover, no facts to be revealed discovery could cure the deficiencies in plaintiffs' claims. *McKee,* 358 F.3d at 334. As such, we find that DeQuincy is improperly joined as a defendant and recommend the court deny the Motion to Remand. Moreover, we recommend the court dismiss DeQuincy from this action without prejudice.

In their Motion to Remand, plaintiffs argue the Notice of Removal was improper and therefore request attorney's fees and costs associated with the Motion to Remand. Doc. 18, p. 3; *see* 28 U.S.C. § 1447(c). Should the court accept our recommendation in denying plaintiffs' Motion to Remand, we further recommend the court deny plaintiffs' motion for attorney's fees and costs.

### III.
#### CONCLUSION

For the foregoing reasons, we **RECOMMEND** the court **DENY** plaintiffs' Motion for Leave to Amend. Additionally, we **RECOMMEND** the court **DENY** plaintiffs' Motion to Remand and **DISMISS** the City of DeQuincy without prejudice. Finally, we recommend the court **DENY** plaintiffs' Motion for Attorney's Fees.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1428–20 (5th Cir. 1996), *superseded by statute on other grounds,* 28 U.S.C. § 636(b)(1)), *as recognized in Cruz v. Rodriguez,* 828 F. App'x 224, 2020 WL 6478502 (5th Cir. 2020) (unpubl.).

THUS DONE AND SIGNED in Chambers this 23rd day of June, 2021.

_____

KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE